UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORITA M. BOWMAN,

                Plaintiff,

– *against* –

NEW YORK STATE HOUSING AND
COMMUNITY RENEWAL, ARLENE
MARDER, *and* MARGARET
RAMROOP,

                Defendants.

**OPINION & ORDER**

18 Civ. 11596 (ER)

RAMOS, D.J.:

      Lorita M. Bowman, proceeding *pro se*, brings this suit against her employer, the New York State Division of Housing and Community Renewal ("HCR"), and HCR employees Arlene Marder and Margaret Ramroop. Bowman alleges that the defendants failed to promote her because of her race, age, national origin, and sex. Bowman filed an Equal Employment Opportunity Commission ("EEOC") complaint concerning this discrimination, and Defendants allegedly retaliated by transferring Bowman to a different position. Bowman additionally claims she suffered from a hostile work environment. These claims are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967 at 29 U.S.C.A. § 621 *et seq.* ("ADEA"), and New York Civil Service Law § 61 ((McKinney 2012). Lastly, Bowman claims that her right to union representation was violated. Pending before the Court is Defendants' motion to dismiss Bowman's Complaint on the basis of lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

For the reasons set forth below, Defendants' motion to dismiss Bowman's Complaint is GRANTED. Bowman's case is dismissed, but she may replead her discrimination, retaliation, and hostile work environment claims.

I.  BACKGROUND

    A. Bowman's Employment with HCR

Bowman's allegations are set forth in a 106-page Complaint, consisting of a *pro se* form complaint, her written statement of claim, documents and communications with the EEOC, documents and communications with HCR, attachments of legal regulations, and written statements and documents describing Bowman's co-workers.

Bowman is a 61-year old, black and Cherokee Indian woman. Compl. at 3–4, Doc. 2. She has been employed with the New York State HCR at their Rent Score Operations Unit ("Score") since 2012 where she screens and dockets rental applications and serves petitions for administrative review. Compl. at 9, 17, 84. Prior to working with the Score unit, Bowman was assigned to HCR's Major Capital Improvement Unit ("MCI") for four years. *Id*. at 82; Mem. of Law in Supp. Of Defs.' Mot. to Dismiss, Doc. 27 at 4.

Documents provided by Bowman show that in March 2013, HCR's Bureau Chief and then-Deputy Bureau Chief Anthony Tatano conducted an investigative interview with Bowman concerning a complaint that she had instigated a fight between other employees and called other employees "stupid." *Id*. at 47–48. The two were also told by other employees that Bowman advised co-workers not to do their work and to ignore supervisors, and spoke derogatorily about other employees. *Id*. at 61. In a memorandum to Bowman after the interview, Tatano wrote that the employees provided the information "in confidence and thus [Tatano] will not disclose their names, and therefore no formal action will be taken at this time." *Id*. at 61–62. In response to the complaints, Bowman denied any wrong-doing in March 2013 memorandum and a June 2013 affidavit. *Id*. at 47–52.

Several years later, in May 2016, the Bureau Chief emailed her regarding complaints by her co-workers about her phone use. *Id*. at 74. Specifically, the co-workers reported Bowman frequently had personal phone conversations during the workday. *Id*. Some of these conversations reportedly disparaged co-workers who were within earshot. *Id*. Bowman replied to the manager's email, denying that she used the telephone or disparaged co-workers. *Id*.

More than one year later, in August 2017, Bowman had a separate dispute with another employee over her spraying of a "very light and airy Mist fragrance." Compl. at 68–69. The other employee accused Bowman of continuing to spray the fragrance throughout the day despite her requests to stop. Bowman's supervisor was aware of this dispute, but Bowman denied any wrong-doing in an August 2017 affidavit submitted to her supervisor. *Id*.

In that same year, Bowman received a positive performance review describing her work as "exemplary." Compl. at 98.

**B. HCR's 2017 Promotions**

Bowman took a civil service exam in January 2017 in order to apply for a position listed on the "Rent Examiner Trainee List." Compl. at 7. She passed the exam with a grade of 80 percent. *Id*. However, she was notified in November 2017 that she would not be promoted.[1] *Id*.

Bowman's claims that two employees with lower passing scores of 70 percent were promoted. As alleged, both employees are female and under the age of forty, one is white, and the other is white and Hispanic. Compl. at 43. Both employees worked for HCR for less time than Bowman did: the first was employed for two years and four months, *Id*. at 38, and the second was employed for two years. *Id*. at 43. In her

---

[1] Bowman adds that in 2015, the "same situation happened," i.e. that she had applied for a position listed on the Rent Examiner Trainee List but had not been promoted, though she did not file any formal complaints then. Compl. at 7.

3

complaint, Bowman states that she worked with HCR for approximately ten years, six years in the Score unit and for four years in the MCI unit prior to that. *Id*. at 82.

### C. EEOC Complaint

On April 23, 2018, Bowman filed a complaint with the EEOC alleging discrimination based on her race, age, and national origin. Compl. at 9, 12. In the charge Bowman stated that she was not promoted while the employees that were younger, white, had lower exam grades, and had less seniority than she were promoted. *Id*. at 9. Bowman did not include any claims of discrimination based on her sex or hostile work environment in the EEOC charge. *Id*. at 9, 12, 87.

The next day, on April 24, 2018, Bowman was summoned by Margaret Ramroop, an HCR "Specialist 2" of the Score unit, to meet with Anthony Tatano, Chief of the Property Management Bureau. Compl. at 82. Bowman's direct supervisor, Arlene Marder, also attended the meeting. Compl. at 7, 82.

Tatano stated that work in Bowman's department was being reduced in size due to technological developments, and that Bowman would be transferred from the Score unit to the MCI unit, where she had originally worked until 2011. Bowman describes the MCI unit in her Complaint as "unfavorable." Compl. at 82, 87. Bowman's responsibilities at the MCI unit were to "docket MCI applications." *Id*. at 82. She does not describe how these responsibilities differed from those in the Score unit, nor how the MCI unit was otherwise "unfavorable." Bowman claims that her work at Score was given to a newly appointed probationary Junior Rent Examiner who had been appointed to Score less than six months prior. *Id*.

Approximately one week after the meeting, in a May 1, 2018 memorandum to Tatano, Bowman claimed that her transfer was due to her challenging Tatano with a "'verbal' rebuttal and exercise[ing her] NYS Civil Service rights." *Id*. at 85. Bowman's Complaint does not state the time or content of this verbal rebuttal. The day after Tatano

4

informed Bowman of her transfer, Bowman contacted the EEOC to bring an additional charge of retaliation and age discrimination. Compl. at 87.

The EEOC reviewed Bowman's allegations and was unable to conclude that a violation of federal law had occurred. Bowman submitted a written rebuttal of the EEOC's evaluation to the EEOC on August 31, 2018. *Id*. at 16. The EEOC reviewed Bowman's rebuttal, and issued a Notice of Dismissal and Right to Sue letter on September 12, 2018. Compl. at 12. Bowman filed her Complaint on December 12, 2018.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the Court accepts all material factual allegations in the complaint as true, but does not draw inferences from the complaint favorable to the plaintiff. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content

5

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The same standard applies to motions to dismiss *pro se* complaints. *See Zapolski v. Fed. Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011). The Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006) (internal quotation marks and citations omitted).

While the Court must construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), "even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't. of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 566 U.S. at 678. A complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

## III. ELEVENTH AMENDMENT IMMUNITY

Defendants argue that Bowman's ADEA and Section 1981 claims are barred by Eleventh Amendment immunity.[2] This argument is only partially correct. Bowman's ADEA and Section 1981 claims for relief against HCR are barred by sovereign immunity. However, only claims for legal relief against Marder and Ramroop in their official capacities are barred by sovereign immunity, while equitable claims are not. In other words, the Eleventh Amendment bars Bowman's claims for money damages, but not her claims for an injunction against Marder and Ramroop ordering her promotion.

---

[2] Defendants make no immunity argument against Bowman's Title VII claims.

6

Although Bowman does not specify, the Court will consider Bowman's claims to be against Marder and Ramroop in both their individual and official capacities. *See Garcia v. Munoz*, No. 94 Civ. 7940, 1995 WL 498777, at *1 (S.D.N.Y. Aug. 21, 1995) ("Where the complaint leaves doubt as to which capacity the official is being sued in, it is preferable for the court to review both possibilities."); *see also Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) (explaining that courts give leeway in reading under which capacity a governmental defendant is sued).

In general, "state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (citation omitted) (quotations omitted). This immunity extends both to states themselves and to their agents and instrumentalities. *Id.* HCR is a division of New York State. Compl. at 9. For this reason, ADEA and Section 1981 claims against HCR are dismissed with prejudice. Additionally, legal claims under the ADEA and Section 1981 against Marder and Ramroop in their official capacities are dismissed with prejudice.

The Eleventh Amendment, however, "does not bar suits against state officials in their official capacities, where those suits seek prospective injunctive or declaratory relief for violations of federal law." *Keitt v. New York City*, 882 F. Supp. 2d 412, 448 (S.D.N.Y. 2011) (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)). Under this framework, the Court is "specifically required . . . to examine whether there exists an *ongoing* violation of federal law." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) (emphasis original). This is satisfied "when Plaintiff allege[s] that the defendants [are] *continuing* to adhere to the approach that was used to revoke [the plaintiff's] liberty." *Pierre v. New York Dep't of Corr. Servs.*, No. 05 Civ. 0275 (RJS), 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (emphasis original) (citation omitted).

Bowman alleges that Defendants are continuing to adhere to their violative decisions — namely, that she continues to have an unfavorable assignment and is being

7

denied a promotion due to discrimination, and that she was assigned to the MCI unit due to retaliation. Compl. at 7, 43, 85. Bowman's claims for equitable relief thus satisfy the injunctive relief exception to Eleventh Amendment immunity.

Equitable relief is available under the ADEA. "In any action brought to enforce [the ADEA] the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter." 29 U.S.C. § 626(b). Equitable relief is likewise available under Section 1981. "A § 1981 suit is treated in the same manner as a § 1983 action for purposes of Eleventh Amendment Immunity," so "when prospective injunctive relief is sought, the Eleventh Amendment is no bar to using [Section 1981] as the vehicle for such relief." *Scelsa v. City Univ. of New York*, 806 F. Supp. 1126, 1138 (S.D.N.Y. 1992).

Accordingly, Bowman's equitable claims against Marder and Ramroop in their official capacities are not barred by sovereign immunity. However, these equitable claims are nevertheless dismissed for failure to state a claim, as set forth more fully below. Bowman's claims under the ADEA and Section 1981 against HCR and her *legal* claims against Marder and Ramroop in their official capacities are barred by sovereign immunity, and are dismissed with prejudice and may not be repled.

## IV. DISCRIMINATION, RETALIATION, AND HOSTILE WORK ENVIRONMENT CLAIMS

Bowman's complaint does not sufficiently establish violations of Title VII, Section 1981, and the ADEA for discrimination, retaliation, and hostile work environment. The claims are dismissed without prejudice and may be repled.

### A. Discrimination

Bowman fails to allege that HCR discriminated against her. To establish a *prima facie* case of discrimination under Title VII, Section 1981, and the ADEA, a plaintiff "must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment

action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citation omitted).

For purposes of the instant motion, Defendants contest just the fourth element, arguing that Bowman fails to plead her alleged mistreatment was *because of* her membership in a protected class. Discriminatory mistreatment at work is actionable "only when it occurs because of an employee's sex, or other protected characteristic." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007). "[T]he fact that the promotions in question were given to younger people of a different race is not sufficient" to show discrimination. *Duviella v. JetBlue Airways*, 353 F. App'x 476, 478 (2d Cir. 2009). Rather, "[a] plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (citations omitted) (quotations omitted).

In this case, Bowman states her own race, age, national origin, and sex and those of two other employees. Compl. at 3–7. However, Bowman does not plead facts to show that she was not promoted *because of* her race, age, national origin, or sex as required by *Patane*. 508 F.3d at 112. Bowman does not plead that she and the two promoted employees are similarly situated in all material respects. Bowman also fails to plead facts showing that Defendants' decisions were motivated by discrimination, and thereby insufficiently pleads that Defendants discriminated against her.

Additionally, Bowman's sex discrimination claims under Title VII must be dismissed because Bowman did not exhaust her remedies by including sex discrimination in her EEOC charge. "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003). This requirement is met when the "conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was

9

made." *Id*. at 200–01. Essentially, this exception functions as "an allowance of loose pleading" and "is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering." *Id*. (citations omitted).

In Bowman's case, Bowman's EEOC complaint made no mention of sex or gender at all. Compl. at 9. With no mention at all of sex or gender, these sex discrimination claims cannot be reasonably expected to grow out of the charges made. Accordingly, Bowman's claims of race, age, and national origin discrimination are insufficiently pleaded, but are dismissed without prejudice and may be replead. Bowman's Title VII claim of sex discrimination is not properly pleaded or properly exhausted, and is dismissed with prejudice and may not be replead.

### B. Retaliation

Bowman insufficiently pleads her claim of retaliation. Retaliation claims under Title VII, Section 1981, and the ADEA are analyzed under the same framework. *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017). A retaliation claim has four elements: "(1) the employee engaged in [a] protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Id*.

The Court finds that the second and third retaliation element are not sufficiently pleaded.

#### 1. Protected Activity

A retaliation claim requires that "the employee engaged in [a] protected activity." *Dickens* 167 F. Supp at 522. "[B]oth formal and informal complaints [are] protected activity…." *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 391 (S.D.N.Y. 2019) (citing *Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 680–81 (2d Cir. 2009).

10

Bowman's filing of a formal EEOC charge is sufficient to establish that she engaged in a protected activity. This element is satisfied.

### 2. Knowledge of Protected Activity

The second element of a retaliation claim requires showing that Defendants knew of Bowman's protected activity. *Dickens* 167 F. Supp. 3d at 522. To be clear, this knowledge does not need to be personal knowledge. "Knowledge of professionals within the institution tasked with investigating and evaluating claims of discrimination, even if such individuals do not influence the decisionmaker, is sufficient" to satisfy this element. *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 585 (S.D.N.Y. 2012), *aff'd*, 526 F. App'x 124 (2d Cir. 2013).

Here, Bowman simply does not allege that Defendants knew of her protected activity. Bowman's Complaint makes no reference to HCR, Marder, Ramroop, or any other HCR employees being aware of her EEOC complaint. While Bowman alleges that her transfer was because of her EEOC complaint, Compl. at 81–86, she does not allege Defendants' knowledge with reference to any factual support. Bowman claims that her transfer to the MCI unit was due to her challenging Tatano with a "verbal' rebuttal and exercis[ng her] NYS Civil Service rights." *Id*. at 85. This claim alone, with no details, does not establish that this rebuttal made Tatano or any other HCR employee aware of Bowman's EEOC complaint. Bowman's Complaint thereby fails to sufficiently plead this required element.

### 3. Adverse Employment Action

Bowman also fails to sufficiently show that her transfer constituted an adverse employment action. To show an adverse action, Bowman must plead facts that show the alleged adverse action "could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019). While Defendants' arguments rely on *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) and related cases, "*Galabya* . . .

no longer represents the state of the law." *Davis-Garett* 921 F.3d 30, 43 (2d Cir. 2019) (citation omitted) (quotation omitted).[3]

Notably, "[t]he standard for an 'adverse employment action' in a retaliation claim . . . is not as demanding as it is in a discrimination claim." *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 542 (S.D.N.Y. 2014). An employer's action can be materially adverse under a retaliation claim "even if the challenged action does not affect the employee's compensation, terms, conditions, or privileges of employment" and thus would not be materially adverse for purposes of a discrimination claim. *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 539 (S.D.N.Y. 2016) (citing *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 208 (2d Cir. 2006)) (quotations omitted).

In Bowman's case, she only describes that she was transferred from the Score unit to the MCI unit. Bowman's complaint contains no details on any change in the conditions of her employment, diminishment of pay, or lessened chances for promotion. The only distinction suggested by the Complaint is that the responsibilities of Score and of MCI differ in that they deal with docketing different applications, but no details are provided on how that docketing differs between units. Compl. at 82, 84. Bowman only states that the MCI unit is an "unfavorable unit." Compl. at 89. Though transfer to an "unfavorable unit" could be a diminishment in prestige or a lessened chance of promotion, Bowman's statement is wholly conclusory. Without elaboration on how the transfer to the MCI unit materially effects Bowman, Bowman falls short of showing a materially adverse employment action.

4. *But-for Cause*

"To establish causation, a plaintiff must show that the protected [activity] was a substantial motivating factor in the adverse employment action." *Cioffi v. Averill Park*

---

[3] Under *Galabya*, to sustain an adverse employment action one must "endure a materially adverse change in the terms and conditions of employment." 202 F.3d at 640.

*Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 167 (2d Cir. 2006) (citations omitted) (quotations omitted). Importantly, "[a] plaintiff may establish causation indirectly by showing his [protected activity] was closely followed in time by the adverse employment action." *Id*. Bowman establishes but-for cause by pleading that the transfer took place one day after the EEOC complaint. This is sufficiently close in time to establish causation. Bowman's complaint thus meets the fourth, but-for cause element of a retaliation claim.

*\*\*\**

A retaliation claim must satisfy all four of the elements considered above. *Dickens* 167 F. Supp. 3d at 522. Bowman insufficiently pleads her retaliation claim by failing to show that Defendants knew of her protected activity or that she suffered an adverse employment action. Her retaliation claims are dismissed without prejudice and may be repled.

### C. Hostile Work Environment

Bowman's hostile work environment claim fails for two reasons. First, Bowman does not meet the exhaustion of remedies requirement under Title VII and the ADEA.[4] Second, her claim fails because Bowman does not show that her workplace was permeated with hostility.

In order to bring a claim under Title VII or the ADEA, a plaintiff must first exhaust her remedies with administrative agencies such as the EEOC. *Fleming v. Verizon N.Y., Inc.,* 419 F. Supp. 2d 455, 462, 467 (S.D.N.Y. 2005) (Title VII); *Holowecki v. Fed. Express Corp.,* 440 F.3d 558, 562–63 (2d Cir. 2006), *aff'd,* 552 U.S. 389 (2008) (ADEA). For hostile work environment in particular, a plaintiff must actually allege a hostile work environment claim in her EEOC charge. "Generally, presenting a disparate treatment or retaliation claim to the EEOC will not exhaust a hostile work environment claim."

---

[4] While Section 1981 claims do not have an exhaustion requirement, for the reasons set forth below, Bowman fails to adequately allege a hostile work claim under the Section.

*Wright v. New York City Off-Track Betting Corp.*, No. 05 Civ. 9790 (WHP), 2008 WL 762196, at *3 (S.D.N.Y. Mar. 24, 2008) (collecting cases).

In this case, Bowman did not include a hostile work environment charge in her EEOC complaint and thereby did not exhaust her remedies for her Title VII and ADEA claims. Compl. at 9. To be clear, Defendants do not argue that Bowman's claims under Section 1981 carry any exhaustion requirements. Bowman's hostile work environment claims under Title VII and the ADEA are dismissed with prejudice and may not be replead.

Even if she had properly exhausted her administrative remedies with regard to her hostile work environment claim, it would still fail because Bowman fails to show that her workplace was permeated with hostility. Hostile work environment claims under Title VII, the ADEA, and Section 1981 require the same elements. *Davis-Garett*, 921 F.3d at 41 (linking the ADEA to Title VII); *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 227 (2d Cir. 2004) (linking Section 1981 to Title VII). A hostile work environment claim requires "showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373–74 (2d Cir. 2002). For the first element, a plaintiff must show that the "workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id*. at 373. Generally, one-off incidents are not enough to establish a hostile work environment, but a single incident can establish a hostile work environment if it is extraordinarily severe. *Id*.

Defendants contest that Bowman does not sufficiently plead the first element. The Court agrees. It is unclear what exactly Bowman considers to be hostile. Bowman's lack of promotion is a one-off event, and she does not allege that her dealings with management resulted in disciplinary action. Even if she were to allege that her 2013 and

14

2016 run-ins with management were "hostile," Bowman's Complaint does not show that her workplace was otherwise "permeated with discriminatory intimidation, ridicule, and insult." *Alfano*, 294 F.3d at 373. She therefore fails to meet the first element of a hostile work environment.

Bowman's hostile work environment claims are insufficiently pleaded, and are dismissed without prejudice and may be repled.

## V.     CLAIMS AGAINST MARDER AND RAMROOP

To the extent that Bowman sues Marder and Ramroop in their individual capacities, her claims also fail because Title VII and the ADEA do not permit claims against defendants in their individual capacities. "Neither [Title VII nor the ADEA] subjects individuals, even those with supervisory liability over the plaintiff, to personal liability." *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011).

Additionally, though Section 1981 does permit claims against defendants in their individual capacities, no facts are pleaded to show Marder or Ramroop were personally involved in the allegedly discriminatory conduct. Under Section 1981, "[i]t must be shown that the defendant had personal involvement in the allegedly discriminatory conduct in order for personal liability to attach." *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (citation omitted). A position of seniority is not enough to hold an individual liable. *Id*. at 344 (citing *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996)) ("[P]ersonal liability of a defendant may not be predicated solely on a position of seniority.").

In this case, Bowman has not alleged that Marder and Ramroop had personal involvement in the allegedly discriminatory conduct. Bowman pleads that Ramroop called her into the meeting at which Bowman was transferred and that Marder was present. Compl. at 82. No pleadings indicate that Marder or Ramroop were involved in the actual decision to transfer Bowman. *See Schanfield*, 663 F. Supp. at 343 (discussing personal involvement in the decision to fire plaintiff). The conduct giving rise to

Bowman's claim is discriminatory failure to promote and retaliation, and it is unclear whether Marder and Ramroop "actually participate[d] in the conduct giving rise to [those claims.]." *Id*. at 343 (citation omitted) (quotations omitted). These facts alone are insufficient to establish discriminatory conduct.

Title VII and ADEA claims against Marder and Ramroop in their individual capacities are dismissed with prejudice because Title VII and the ADEA do not permit claims against defendants in their individual capacities. Section 1981 claims are dismissed without prejudice because, while such claims are allowed under Section 1981, in Bowman's case there are insufficiently pleaded.

## VI. CLAIMS REGARDING *WEINGARTEN* UNION RIGHT VIOLATIONS

Bowman's claim that her *Weingarten* right was violated is dismissed. When employees in unionized workplaces face a confrontation with their employer, The National Labor Relations Act guarantees them the right to assistance from a union representative. *N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251, 260 (1975) (citing National Labor Relations Act, §§ 7, 8(a)(1) as amended 29 U.S.C.A. §§ 157, 158(a)(1)). This right does not extend to workplaces in which the employees are not represented by a union. *IBM Corp.*, 341 NLRB 1288 (2004). Nothing in Bowman's pleadings indicates that Bowman is in a union or entitled to union representation in discussions with her employers.

Moreover, if Bowman's *Weingarten* right has been violated, the proper forum to hear her complaint is the National Labor Relations Board, not this Court. The "NLRB has exclusive jurisdiction . . . when there is an arguable violation of the NLRA." *Rest. Law Ctr. v. City of New York*, 360 F. Supp. 3d 192, 223 (S.D.N.Y. 2019) (citing *Marine Engineers Beneficial Ass'n v. Interlake S. S. Co.*, 370 U.S. 173 (1962)). Any claim that Bowman's *Weingarten* right was violated is dismissed with prejudice and may not be replead.

## VII. CLAIMS UNDER NEW YORK CIVIL SERVICE LAW

Bowman's claims under New York state law are misplaced. Bowman brings a claim mistakenly citing the predecessor form of a statute that is adjacent to the one which governs this situation.[5] The effective section governing promotions is New York Civil Service Law § 61 (McKinney 2012). *See Oliphant v. Caldwell*, 212 F. Supp. 3d 480, 483 (S.D.N.Y. 2016) ("When a position opens up, the [civil service employer] must certify a list of candidates from the eligible list who are willing to accept the position or promotion, and must hire or promote a candidate who has or is tied for one of the three highest scores.") (citing N.Y. Civ. Serv. Law § 61(1)).

The Court's independent review establishes that Bowman's state law claims are not appropriate for federal court. Disputes over New York agency promotion decisions belong in Article 78. *See Cherry v. New York State Civil Serv. Comm'n*, 55 A.D.3d 604, 604, 865 N.Y.S.2d 303, 303 (2008) (proceeding pursuant to Article 78 to review compliance of New York State Division of Housing and Community Renewal promotion decisions with Civil Service Law § 61); *see also* N.Y. C.P.L.R. § 7803 (McKinney 2019). "[T]he [New York] Supreme Court has *exclusive* jurisdiction over Article 78 proceedings, with the exception of the Article 78 proceedings that must be brought in the Appellate Division." *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003) (citation omitted) (quotation omitted). In employment cases against New York state for which "there is no mention by either plaintiff or defendants of a prior Article 78 hearing," federal courts decline to exercise jurisdiction. *Camacho v. Brandon*, 56 F. Supp. 2d 370, 380 (S.D.N.Y.), *on reconsideration in part*, 69 F. Supp. 2d 546 (S.D.N.Y. 1999); *see also Birmingham v. Ogden*, 70 F. Supp. 2d 353, 372 (S.D.N.Y. 1999) ("[F]ederal courts are loath to exercise jurisdiction over Article 78 claims. Even where a plaintiff has one or

---

[5] Bowman cites N.Y. Civ. Serv. Law § 16 (McKinney 1909), a predecessor to Promotions examinations, N.Y. Civ. Serv. Law § 52 (McKinney 2012). While § 52 describes factors in promotion, § 61 describes the actual appointment or promotion procedure. N.Y. Civ. Serv. Law § 61 (McKinney 2012).

17

more federal claims still alive . . . the interests of judicial economy are not served by embroiling this court in a dispute over local laws and state procedural requirements.").

Bowman does not plead that there was a prior Article 78 hearing and pleads nothing to indicate her claims regarding violations of the process of selecting promotions belong anywhere except in an Article 78 proceeding. As such, Bowman's state law claims are dismissed with prejudice and may not be replead.

## VIII. CONCLUSION

For the reasons set forth above, Bowman's Complaint is dismissed. However, Bowman may replead certain claims, specifically:

- Discrimination, retaliation, and hostile work environment claims under Section 1981 for legal and equitable relief against Marder and Ramroop in their individual capacities.

- Discrimination, retaliation, and hostile work environment claims under Section 1981 for equitable relief against Marder and Ramroop in their official capacities.

- Discrimination and retaliation claims under Title VII against HCR, except those alleging sex discrimination.

- Discrimination and retaliation claims Title VII against Marder and Ramroop in the official capacities, except those alleging sex discrimination.

- Discrimination and retaliation claims under the ADEA for equitable relief against Marder and Ramroop in their official capacities.

All other claims are dismissed with prejudice and may not be re-filed.

If Bowman choses to re-file, she must do so by April 15, 2020. Defendants' answer or objections to an Amended Complaint by Bowman must be submitted by May 6, 2020.

The Clerk of the Court is directed to terminate the motions, Docs. 26 and 30.

It is SO ORDERED.

Dated:  March 11, 2020
        New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.