UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORITA M. BOWMAN,

                Plaintiff,

– against –

NEW YORK STATE HOUSING AND
COMMUNITY RENEWAL, ARLENE
MARDER, *and* MARGARET
RAMROOP,

                Defendants.

**OPINION & ORDER**

18 Civ. 11596 (ER)

RAMOS, D.J.:

    Lorita M. Bowman, proceeding *pro se*, brings this action against her employer, the New York State Housing and Community Renewal ("HCR"), and her supervisors at HCR, Arlene Marder and Margaret Ramroop, for employment discrimination, retaliation, and creating a hostile work environment. Before the Court is Defendants' motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 51. For the reasons set forth below, Defendants' motion to dismiss is GRANTED in its entirety.

I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

    Bowman first filed her complaint on December 11, 2018 for employment discrimination based on age, race, national origin, and sex, retaliation, and hostile work environment. Doc. 2. These claims were brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). Bowman alleged that the Defendants failed to promote her in 2017 because of her protected characteristics: She is a Black and Cherokee Indian woman who at the time

---

[1] A full description of the facts is available in the March 13, 2020 Opinion & Order dismissing the initial complaint. Doc. 40 at 2–5. The factual background here represents a brief summary of those facts.

was 60 years old.  Doc. 2 at 3–4, 8.[2]  Bowman alleges that despite being employed in HCR's Rent Score Operations Unit ("SCORE") since 2012 and scoring 80% on a civil service exam, higher than many of her colleagues, she was passed over for promotion in November 2017.  *Id.* at 7, 9.  By contrast, both employees who received promotions instead were white women under the age of 40 who scored the minimum passing grade of 70%.  *Id.*

In response, Bowman filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against HCR on April 23, 2018.  *Id.* at 9, 25.  On the following day, April 24, 2018, Ramroop summoned Bowman to a meeting with Anthony Tatano, Chief of the Property Management Bureau at HCR.  *Id.* at 82.  At this meeting, where Marder was also present, Tatano announced that Bowman would be transferred from SCORE to MCI, another unit within HCR, because of a decrease in the workload at SCORE.  *Id.* at 82, 89.  Bowman had previously worked in the MCI for about four years and considered it "a very unfavorable unit."  *Id.* at 82, 87.  Shortly after the meeting, Bowman updated her EEOC charge to include a claim of retaliation because she claimed the transfer was done in retaliation for her filing of the charge.  *Id.* at 87.  Ultimately, the EEOC reviewed Bowman's allegations and was unable to conclude that a violation of federal law had occurred, so it issued a Notice of Dismissal and Right to Sue letter on September 12, 2018.  *Id.* at 12–14.

In support of her hostile work environment claim, Bowman included exhibits detailing several workplace incidents in 2013, 2016, and 2017 wherein she was accused of insulting co-workers, instigating altercations between co-workers, and otherwise engaging in disruptive behavior.  *Id.* at 47–52, 61–62, 68–69, 74.  She denied any wrongdoing.  *Id.*  Later in 2017, she received a positive performance review describing her work as "exemplary."  *Id.* at 98.

---

[2] Citations to Bowman's initial and amended complaints refer to the ECF stamp page numbers.

Defendants moved to dismiss Bowman's complaint on June 14, 2019, Doc. 26, and filed a brief in support thereof on August 20, 2019, Doc. 34. They argued that her claims were barred by sovereign immunity under the Eleventh Amendment of the U.S. Constitution, that Bowman's hostile work environment and sex discrimination claims were not administratively exhausted, and that she failed to plead facts sufficient to support her claims. The Court agreed with most of these arguments and issued an Opinion & Order on March 13, 2020 (the "March 13 Order"), dismissing Bowman's barred and non-exhausted claims with prejudice. Doc. 40 at 18. The Court dismissed the rest of her claims without prejudice and with leave to replead. *Id.* Specifically, the Court granted Bowman leave to replead the following claims:

- Discrimination, retaliation, and hostile work environment claims under Section 1981 for legal and equitable relief against Marder and Ramroop in their individual capacities.
- Discrimination, retaliation, and hostile work environment claims under Section 1981 for equitable relief against Marder and Ramroop in their official capacities.
- Discrimination and retaliation claims under Title VII against HCR, except those alleging sex discrimination.
- Discrimination and retaliation claims Title VII against Marder and Ramroop in the official capacities, except those alleging sex discrimination.
- Discrimination and retaliation claims under the ADEA for equitable relief against Marder and Ramroop in their official capacities.

*Id.*

On May 21, 2020, Bowman filed an amended complaint. *See* Doc. 45. Bowman presents largely the same facts to support her claims of discrimination, retaliation, and hostile work environment under Title VII, Section 1981, and the ADEA. In support of her discrimination claim, Bowman adds a new document dated October 19, 2016, consisting of a list of candidates who passed the exam for the Rent Examiner position.[3]

---

[3] Bowman also describes the promotions of at least six other HCR employees who were promoted in 2017, but she does not contend that these promotions were discriminatory. *Id.* at 35–37.

3

*Id.* at 154–55. Regarding her retaliation claim, Bowman includes new documents showing the MCI's case processing times in 2012 and 2013, *id.* at 107–109, and a copy of her paycheck from 2012, when she previously worked in MCI, *id.* at 123. Lastly, Bowman's amended complaint does not allege new facts in support of the hostile work environment claim but does include an exhibit from the initial complaint that was not discussed in the March 13 Order.[4] This exhibit is an e-mail that Bowman wrote to Sev Moro, Director of Human Resources at HCR, on March 24, 2016, wherein she complained that Marder had pulled out documents from Bowman's desk without her permission and then yelled and screamed at her when Bowman returned from a sick day. *Id.* at 147–48. Bowman also accused Marder of calling her "stupid" to Tatano and thereafter assigning a relatively new employee to review Bowman's work. *Id.* at 148. However, Bowman alleges that Tatano voiced his disagreement with Marder's insult by reminding her that he personally recruited Bowman to work at MCI. *Id.* at 148. Indeed, it appears that Bowman discussed the incident with Human Resources and remained at SCORE. *Id.* at 149.

## II.    LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). But the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The well-pleaded allegations must "state a claim to relief that is plausible on its face." *Id.* If the plaintiff does not "nudge[ her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

---

[4] The exhibit was attached to the initial complaint at ECF pages 92 and 93.

4

Of course, *pro se* pleadings should be read "liberally and interpret[ed] . . . to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). However, such a plaintiff's complaint must still "contain factual allegations sufficient to raise a 'right to relief above the speculative level'" in order to survive a motion to dismiss. *Id*. (quoting *Twombly*, 550 U.S. at 555).

### III. CLAIMS AGAINST MARDER AND RAMROOP

#### A. Discrimination

To establish a *prima facie* case of discrimination under either Title VII, Section 1981, or the ADEA, a plaintiff "must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (applying these elements to a claim under Title VII and Section 1981); *Holowecki v. Fed. Express Corp.*, 382 F. App'x 42, 45 (2d Cir. 2010) (applying these elements to an ADEA claim). All elements of the *prima facie* case must be plausibly pleaded for the claim to survive a Rule 12(b)(6) motion to dismiss, though factual allegations need only support a "minimal inference of discriminatory motivation" at this stage. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Additionally, Section 1981 permits a claim against a defendant in his individual capacity, but "[i]t must be shown that the defendant had personal involvement in the allegedly discriminatory conduct in order for personal liability to attach." *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009).

The Court previously dismissed Bowman's discrimination claims against Marder and Ramroop in their individual capacities under Section 1981 because Bowman had failed to allege that either of them were personally involved in the allegedly discriminatory decision not to promote her in 2017. Doc. 40 at 15–16. The Court noted that their position of seniority was not sufficient to give rise to an inference that they "actually participate[d] in the conduct giving rise to [this claim]" without additional facts connecting them to the promotion decisions. Doc. 40 at 16 (quoting *Schanfield*, 663 F. Supp. 2d at 343). The only new evidence Bowman provides is the 2016 list of candidates who passed the exam for the Rent Examiner position, with corresponding exam scores, but this document bears no mention of Marder or Ramroop. Doc. 45 at 154–55. Neither does it mention the two female employees who did receive promotions in 2017, and it is irrelevant to the results of the January 2017 exam that allegedly qualified Bowman for promotion. Therefore, the Court dismisses the individual-capacity claims again because Bowman has failed to plead any additional facts showing that Marder and Ramroop were personally involved in the promotion decisions.

The Court also dismissed the discrimination claims against Marder and Ramroop in their official capacities because Bowman did not plead facts plausibly showing that she was passed over for promotions *because* of her race, age, national origin, or any other protected class. Doc. 40 at 9. She stated her own race, age, and national origin and those of two employees who received promotions instead of her, but did not plead facts that could have showed the decisionmakers themselves were "motivated by discrimination." *Id.* Bowman's amended complaint does not cure this defect because she has not alleged any new facts that give rise to an inference of discriminatory intent based on her protected characteristics. *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (holding that discriminatory treatment is actionable "only when it occurs because of an employee's sex, or other protected characteristic"). The 2016 list of candidates does not identify

6

which, if any, of them received promotions or show facts suggesting that any of them received a promotion instead of Bowman based on discriminatory intent.

In her opposition brief, Bowman raises a new allegation of discrimination involving another employee in the MCI who, despite having less "seniority" than Bowman, received a promotion in August 2019. Doc. 55 at 7–9. Defendants argue that this allegation should not be considered because it is not found in the amended complaint, citing *Fadem v. Ford Motor Co.* for the general principle that "parties cannot amend their pleadings through issues raised solely in their briefs." 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005). Nevertheless, courts in this District have at times shown leniency to *pro se* plaintiffs by considering facts alleged for the first time in their opposition papers, though these new facts have usually been about events and claims already alleged in the complaint. *See, e.g.*, *Smith v. Collins*, No. 15 Civ. 0216 (PAE) (JCF), 2015 WL 13746668, at *2–3 (S.D.N.Y. Oct. 1, 2015) (accepting factual allegations in *pro se* plaintiff's opposition brief expounding on events already described in the complaint); *Shipman v. New York State Office of Persons with Developmental Disabilities*, No. 11 Civ. 2780 (GBD) (FM), 2012 WL 897790, at *2 n.3 (S.D.N.Y. Mar. 13, 2012) (same).

Bowman's new allegation, on the other hand, regards the promotion of a previously unmentioned employee occurring almost two years after she was passed over, and over one year after the allegedly retaliatory decision to transfer her from SCORE to MCI. Further, there is no indication that Bowman filed an EEOC discrimination charge based on this allegation — without which this claim would be dismissed because Bowman has not exhausted her administrative remedies. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Each incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice.'"). Lastly, the new allegation is insufficient to sustain a claim of discrimination because Bowman does not allege that she applied for the position or was passed over for promotion because of her race, age, or national origin. Bowman fails to plead facts showing that the decision to promote the

other employee and not her was motivated by discrimination. Therefore, the Court will not consider the new and unrelated allegation of discrimination in 2019, and the discrimination claim against Marder and Ramroop in their official capacities is dismissed without prejudice.

### B. Retaliation

A retaliation claim under Title VII, Section 1981, or the ADEA requires evidence that "(1) the employee engaged in [a] protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), *aff'd*, 689 F. App' x 670 (2d Cir. 2017). As with discrimination claims under Section 1981, retaliation claims under this statute against a defendant in his individual capacity require a showing that the defendant had personal involvement in the allegedly retaliatory conduct. *Schanfield*, 663 F. Supp. 2d at 344.

Regarding the individual capacity claims, Bowman has failed to plead facts that show Marder or Ramroop were personally involved in the decision to transfer Bowman from SCORE to MCI. The Court has already found that the allegation that Ramroop summoned Bowman to the meeting where Tatano ordered Bowman's transfer, with Marder present, does not indicate that either Marder or Ramroop "were involved in the *actual* decision to transfer Bowman." Doc. 40 at 15 (emphasis added). Bowman has not pleaded any additional facts connecting these defendants to the transfer decision, so the retaliation claim against Marder and Ramroop in their individual capacities fails.

The Court previously dismissed the retaliation claim against Marder and Ramroop in their official capacities under Title VII and the ADEA because Bowman did not allege facts plausibly supporting that HCR knew she had engaged in a protected activity by filing her EEOC charge. Doc. 40 at 11. Bowman's amended complaint re-alleges the same facts surrounding the transfer decision, and they still fail to suggest that at the time

8

of the decision, HCR was aware of the EEOC charge. Though she was notified of the transfer decision the day after the charge was filed, Bowman does not plead additional facts that raise the knowledge element past the "speculative level." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Likewise, Bowman has not pleaded new facts suggesting that the transfer to MCI was materially adverse.[5] New documents showing the average processing times for the MCI in 2012 and 2013, Doc. 45 at 107–09, and a copy of Bowman's paycheck from May 2012 (when she was working in the MCI), *id.* at 123, are irrelevant to the determination of whether transferring her from SCORE to MCI in 2018 was an adverse employment action.

For these reasons, Bowman's retaliation claims against Marder and Ramroop in their official capacities are dismissed without prejudice.

### C. Hostile Work Environment

Bowman was only allowed to replead her hostile work environment claim under Section 1981 because she did not exhaust her administrative remedies under Title VII or the ADEA and these were dismissed with prejudice. *Id.* at 13–14. To state a claim under Section 1981, the plaintiff must show that the alleged harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citation omitted). Bowman's amended complaint falls short of this standard because she re-alleges incidents — such as the failure to promote her and the confrontation with supervisors in 2016 — that the Court has already concluded "fai[l] to show that her workplace was permeated with hostility." Doc. 40 at 14. Additionally, Bowman's handwritten letter also highlights (1) a 2013 incident involving a fight between

---

[5] Even Bowman's conclusory allegation in the initial complaint that the MCI is an "unfavorable unit," Doc. 2 at 87, is nowhere found in the amended complaint.

9

co-workers at MCI that Bowman allegedly instigated and (2) an accusation in 2017 that Bowman disturbed a co-worker by spraying perfume on her. Doc. 45 at 3–4. Rather than supporting Bowman's claims, these incidents could lead to an inference that she herself created a hostile work environment.[6] Further, Bowman does not allege that either Marder or Ramroop were directly involved in these incidents.[7]

Bowman also re-alleges incidents involving Marder in 2016 that merit consideration. As noted *supra* Part I, Bowman accused Marder of (1) calling her "stupid" to Tatano in her presence, (2) assigning a new employee to review Bowman's work, and (3) yelling and screaming at Bowman on at least one occasion in March 2016. *Id.* at 147–48. Clearly, Marder's insults and yelling could have caused Bowman embarrassment and humiliation. But as described by Bowman, the incidents appear to be "one-offs" that ultimately did not alter the conditions of Bowman's employment. *Alfano*, 294 F.3d at 373 ("The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered."). Bowman herself explained that Tatano defended her against Marder's insult and that she remained in the SCORE unit after the incident. Doc. 45 at 148–49. Bowman also has not pointed to any "resulting disadvantage or adverse effect on her job performance" caused by her docketing work being placed under review with another employee. *Alfano*, 294 F.3d at 376. Accordingly, Bowman's hostile work environment claim against Marder and Ramroop fails.

---

[6] After the 2013 incident, Tatano sent a memorandum to Bowman informing her that she had been accused by co-workers of creating a hostile work environment, but he stated that no formal disciplinary action would be taken because the co-workers had come to him "in confidence." Doc. 45 at 103–04.

[7] Bowman does allege that the accusation of perfume-spraying was reported to Marder, Doc. 45 at 3, but this is only a tangential, involuntary involvement. Bowman does not allege that Marder took any action based on the report.

## IV. CLAIMS AGAINST HCR

As with the claims against Marder and Ramroop, the claims of discrimination and retaliation against HCR under Title VII are not adequately pleaded, and the Court dismisses them without prejudice.

### A. Discrimination

Bowman re-alleges that HCR passed her over for promotions in 2017 because of her age, race, and national origin. Doc. 45 at 2–3. HCR argues that her discrimination claim fails as to the fourth element of the *prima facie* case, "that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). As outlined *supra* Part III.A, Bowman has failed in her amended complaint to allege facts supporting an inference that HCR did not promote her because of her age, race, or national origin. She has re-stated many of the facts set forth in the initial complaint, including the age, race, and national origin of the employees who did get promotions, but these have previously been deemed insufficient. Doc. 40 at 9. The new document with the 2016 exam scores of promotional candidates sheds no light on the motivation behind the 2017 promotions based on a 2017 exam. For these reasons, the Court dismisses the discrimination claim against HCR.

### B. Retaliation

Similarly, Bowman has failed to plead facts that support an inference that the second and third elements of a retaliation claim are met, namely, that "(2) the employer was aware of that activity;" and "(3) the employee suffered an adverse employment action." *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017). Bowman has not alleged facts plausibly supporting the inference that HCR was aware of the EEOC charge she had filed only a day earlier. And there are no allegations suggesting that the transfer to MCI in 2018 was

11

a materially adverse employment action. *See supra* Part III.B. Therefore, Bowman's retaliation claim against HCR fails.

### C. Hostile Work Environment

Contrary to Bowman's statement that "[a]s per The Honorable Edgardo Ramos, U.S.D.J., I am able to replead my . . . hostile work environment claims, against my employer, New York State Housing and Community Renewal," Doc. 45 at 2–3, the Court specifically dismissed this claim with prejudice. Doc. 40 at 6, 18. The Court reaffirms its findings that she did not exhaust her remedies for this claim under Title VII or the ADEA, and relief under Section 1981 against HCR is barred by Eleventh Amendment sovereign immunity. *Id.* at 6, 13–14.

## V. FUTURE AMENDMENTS

As discussed above, the Court dismisses the amended complaint for much the same reasons it dismissed the initial complaint, namely, Bowman's failure to adequately plead facts supporting her claims. The claims are dismissed without prejudice because the Court has not reviewed them on the merits and their defects are not "substantive or incurable"; with better factual pleading, Bowman could conceivably state claims upon which relief may be granted. *Cf. Larkem v. Dep't of Educ.*, No. 17 Civ. 7017 (ER), 2018 WL 1959555, at *6 (S.D.N.Y. April 23, 2018) (dismissing Title VII claims with prejudice because plaintiff failed to file an EEOC charge).

To amend her complaint again, however, Bowman must comply with Fed. R. Civ. P. 15(a)(2), which requires her to obtain either leave from the Court or the consent of all opposing parties. As a general rule, leave to amend should be freely granted, *id.*, and in the case of *pro se* plaintiffs in particular, the courts "should grant leave to amend if a 'liberal reading' provides 'any indication that a valid claim might be stated.'" *Larkem*, 2018 WL 1959555, at *5 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). But given Bowman's failure to cure the defects identified in the March 13 Order, the Court must be assured that she will do so now before granting leave. *TechnoMarine SA v.*

12

*Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . to the district court . . . how amendment would cure the pleading deficiencies in its complaint."). Accordingly, if Bowman moves for leave to amend, she must attach a proposed second amended complaint *and* concisely explain how she has addressed the defects identified in this Opinion & Order.

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the amended complaint is GRANTED. The claims therein are dismissed without prejudice. If Bowman wishes to make a motion for leave to file a second amended complaint, she must do so by December 5, 2020. In seeking leave to amend, Bowman must provide her proposed second amended complaint and a concise explanation of how she has addressed the defects identified in this Opinion & Order.

The Clerk is respectfully directed to terminate the motion, Doc. 51.

It is SO ORDERED.

Dated:  November 5, 2020
        New York, New York

                                        _____
                                        EDGARDO RAMOS, U.S.D.J.

13